■ ANTHONY S. ASTERINO, Appellant, v ASTERINO & ASSOCIATES, INC., Respondent. [711 NYS2d 626] —Cardona, P. J. Appeal from an order of the Supreme Court (Keniry, J.), entered October 28, 1999 in Saratoga County, which granted defendant's motion to vacate a default judgment entered against it.

Defendant is a closely held corporation formed by plaintiff in 1985 for the purpose of furnishing management and billing services to medical providers. Between 1987 and June 1995, plaintiff and his brother were the sole shareholders and officers of defendant. On June 30, 1995, plaintiff and his brother sold the business to National Medical Financial Services Corporation (hereinafter NMFSC) and became its employees. In connection with the sale, the parties executed an asset purchase agreement and a stock purchase agreement, with attendant noncompetition and nonsolicitation agreements, as well as two employment agreements (hereinafter collectively referred to as the closing documents). Under the terms of the noncompetition

and nonsolicitation agreements, plaintiff agreed, *inter alia*, not to engage in any competing business within New York for a period of two years after the closing date set forth in the stock purchase agreement (July 3, 1995). Plaintiff further agreed not to solicit customers or employees of NMFSC or defendant nor interfere with any contractual relationships of NMFSC and defendant. Similarly, under the terms of his employment agreement, plaintiff agreed not to engage in any business competing with defendant for a period of two years after the date of termination of his employment and not to solicit any customers or employees of defendant during the same time period.

Although there is a dispute concerning plaintiff's employment status with defendant on February 1, 1997, it is undisputed that he did not provide any additional services on its behalf after that date. In April 1998, as the result of plaintiff's alleged solicitation of defendant's clients, plaintiff's brother sent a letter advising a client that plaintiff was contractually prohibited from providing medical billing services. In response, plaintiff commenced the instant action seeking, *inter alia*, a declaration that the restrictive covenants contained in the closing documents were unenforceable. Service was made upon the Secretary of State on April 9, 1998 and, following defendant's failure to appear, plaintiff moved for a default judgment on May 4, 1998. On the same day, plaintiff mailed a copy of the motion papers to defendant at its last known address, which was different from the address on file with the Secretary of State. Although defendant received the motion papers and consulted with an attorney for representation, the attorney did not proceed due to a conflict of interest; however, the attorney advised defendant that plaintiff had agreed to adjourn the motion. Since plaintiff did not agree that an adjournment had been given and defendant failed to submit papers in opposition to the motion, Supreme Court entered a default judgment on July 14, 1998.

After a number of months seeking to obtain an attorney, defendant finally obtained counsel and moved to vacate the default judgment on March 18, 1999. Supreme Court granted the motion upon finding that the default was excusable, defendant had a meritorious defense to the action and vacatur would not prejudice plaintiff. This appeal ensued.

Initially, we find no merit to plaintiff's claim that defendant was without standing to make the motion to vacate. Notwithstanding the fact that NMFSC and defendant entered into an agreement on September 4, 1998 under which they assigned any rights arising out of the litigation to Medical Business

Systems, Inc., no formal substitution of parties was ever effectuated. Since defendant is an original party, it may still participate in this action (*see*, CPLR 1018; *Central Fed. Sav. v 405 W. 45th St.*, 242 AD2d 512; *Bova v Vinciguerra*, 139 AD2d 797, 799).

Turning to the merits, in order to vacate a default judgment the burden is on the moving party to establish a reasonable excuse for the default and a meritorious defense (*see*, CPLR 5015 [a] [1]; *Matter of Twin Towers Assocs. Ltd. Partnership v Board of Assessors*, 261 AD2d 705, 706; *All States Med. Placement Agency v Kripke*, 223 AD2d 953, 954). The movant must further demonstrate that the default was not willful and without prejudice to the opposing party (*see*, *Wilcox v U-Haul Co.*, 256 AD2d 973, 974).

With regard to its excuse for the default, defendant sets forth a detailed account of the difficulties encountered in retaining an attorney to represent it and the apparent misconceptions that occurred during that process. Defendant's president, Christopher Asterino (hereinafter Asterino), avers that he first learned of the action in early May 1998 when he received the motion papers together with copies of the summons and complaint. He states that he immediately contacted an attorney and, on May 13, 1998, this first attorney notified him that plaintiff's attorney had requested her not to represent defendant because of a possible conflict of interest. The first attorney met with plaintiff's attorneys on May 26, 1998, during which time it was agreed that both parties would obtain new counsel. According to that attorney, plaintiff's attorneys agreed to adjourn the pending default motion and extend defendant's time to answer the complaint to allow for substitution of counsel.

The first attorney avers that she promptly referred defendant's case to another attorney and, believing that he had agreed to accept it, forwarded the file on June 15, 1998. According to Asterino, he had difficulty contacting the new attorney. The record further indicates that, after being contacted by defendant's first attorney, the new attorney advised by letter dated September 21, 1998 that he could not take the case due to a conflict of interest and had so informed Asterino by letter dated June 15, 1998; however, Asterino contended that he never received the letter. We further note that the new attorney misplaced defendant's file and did not return it until November 1998.

Defendant's current counsel avers that, after the file was located, it was forwarded to him and he began his review. Commencing in early November 1998, he had extended conversa-

tions with plaintiff's former and present attorneys during which he attempted to persuade them to have plaintiff voluntarily consent to open the default judgment. Although plaintiff communicated his refusal to consent to vacatur in December 1998, defendant's current counsel continued to negotiate with plaintiff's attorneys through February 1999 upon discovering additional legal grounds purportedly warranting vacatur. Following the breakdown of negotiations, a formal motion to vacate was made in March 1999.

In light of the considerable confusion created as a result of defendant's attempts to obtain an attorney to represent it in the action, the misunderstandings surrounding the alleged agreement to adjourn plaintiff's motion and the good-faith effort by defendant's current counsel to resolve the matter without resort to a formal motion, we find that defendant has established a reasonable excuse for the default and that it was not willful (*see, Busone v Bellevue Maternity Hosp.*, 266 AD2d 665, 667-668; *Seashells, Inc. v Bridge Art Prods.*, 172 AD2d 353; *see also, Lovisa Constr. Co. v Facilities Dev. Corp.*, 148 AD2d 913, 914). In addition, we note that there is potential merit to defendant's claim that plaintiff was precluded from engaging in competitive activities by the restrictive covenants contained in the closing documents in view of the language set forth in the agreements and the parties' dispute over plaintiff's employment status. Lastly, under the circumstances presented herein, plaintiff would not be prejudiced by vacatur. Therefore, we find that Supreme Court did not abuse its discretion in vacating the default judgment.

Mercure, Peters, Carpinello and Graffeo, JJ., concur. Ordered that the order is affirmed, without costs.